UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH KERRISSEY, III and JDHE HOLDING, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM BRUCE, DAVID DELOURY, JAMES MITCHELL, and GARY CRUICKSHANK, <br><br> Defendants. | Civil Action No. 21-11277-FDS |

# MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, C.J.**

This case arises out of a dispute between two former business partners, plaintiff Joseph Kerrissey, III and defendant William Bruce. Defendants James Mitchell and Gary Cruickshank provided legal counsel to Bruce. According to the amended complaint, they assisted him in initiating involuntary bankruptcy proceedings against Kerrissey and his company so that Bruce could avoid paying money he owed to Kerrissey. As relevant here, the amended complaint asserts a claim against attorneys Mitchell and Cruickshank for what the amended complaint alleges is "civil conspiracy for abuse of process" based on their involvement in Bruce's alleged scheme.

Mitchell and Cruickshank have separately moved to dismiss the claims against them, contending that the litigation privilege protects them from liability. For the following reasons, the motions will be granted.

I.     **Background**

The facts are set forth as alleged in the amended complaint.

A.     **Factual Background**

According to the amended complaint, Joseph Kerrissey, III and William Bruce worked together on two different real-estate development projects, called Blueberry Hill and Sagamore Place. (Am. Compl. ¶¶ 8-17). It alleges that throughout the relevant time, Kerrissey was providing the cash to maintain the two projects and was also providing construction services through his company, J Kerrissey, LLC ("JKLLC"). (*Id.*). JKLLC was owed $850,000 for its work on the Blueberry Hill project. (*Id.* ¶¶ 10-11). To assist Bruce in closing on that project, Kerrissey, on behalf of JKLLC, allegedly "agreed to carry the outstanding $850,000 owed it as a second mortgage against the Blueberry Hill property, payable on July 1, 2018." (*Id.* ¶ 11).

According to the amended complaint, Bruce promised to repay Kerrissey once the project was finished and he was able to start selling units. (*Id.* ¶ 9). However, Bruce failed to do so. (*See id.* ¶ 18). Instead, in 2018, he initiated involuntary bankruptcy proceedings against Kerrissey and JKLLC. (*Id.* ¶¶ 72-83).

The present dispute arises out of the bankruptcy proceedings. The amended complaint alleges that attorney James Mitchell served as counsel to Bruce during his business dealings with Kerrissey. (*Id.* ¶ 12). In 2018, Mitchell allegedly referred Bruce to attorney Gary Cruickshank to discuss initiating involuntary bankruptcy proceedings against Kerrissey and JKLLC, and assisted Bruce by identifying the creditors necessary to initiate those proceedings. (*Id.* ¶¶ 72, 77). Although Bruce was not a petitioning creditor, he allegedly paid Cruickshank to file the bankruptcy petitions on behalf of the creditors that Mitchell had helped to assemble. (*Id.* ¶¶ 77-78).

According to the amended complaint, Mitchell and Cruickshank provided legal assistance

2

to Bruce knowing that his objective in pursuing the involuntary bankruptcies of Kerrissey and JKLLC was to eliminate Kerrissey's interest in their joint developments and disrupt his livelihood.  (*Id.* ¶ 75).

### B. Procedural History

On December 26, 2019, Kerrissey and JDHE Holding, LLC filed the initial complaint. (Notice of Removal, Ex. 1).  The amended complaint was filed on July 19, 2021.  (Notice of Removal, Ex. 8).  The case was thereafter removed to this court.

As relevant here, the amended complaint asserts a claim against attorneys Mitchell and Cruickshank for "civil conspiracy for abuse of process," contending that they "shared and actively joined in Bruce's plan to commence involuntary bankruptcy proceedings against JKLLC and Kerrissey, individually, for the ulterior or illegitimate purpose of eliminating Kerrissey's interest in the Sagamore Place project, avoiding his obligation to pay JKLLC and otherwise promoting his interest at the expense of Kerrissey, his family and his companies."  (Am. Compl. ¶ 93).

Mitchell and Cruickshank moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), contending that the litigation privilege protects them from liability.[1]

## II. Standard of Review

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the

---

[1] Mitchell also contends that the claim against him should be dismissed because the amended complaint fails to plausibly allege that he provided substantial assistance toward a conspiracy. (*See* Docket No. 19 at 1). Cruickshank further contends that the claim against him should be dismissed for lack of standing, failure to state a claim, preemption by federal law, issue preclusion, and claim preclusion. (*See* Docket No. 21 at 6). Because the Court concludes that the claims against both attorneys are barred by the litigation privilege, it need not reach a conclusion as to the other issues.

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.   Analysis

####    1.   The Litigation Privilege

Massachusetts law "precludes civil liability based on communications made by a party, witness, or attorney in connection with judicial proceedings or contemplated litigation." *Bassichis v. Flores*, 490 Mass. 143, 144 (2022). "The privilege applies regardless of malice, bad faith, or any nefarious motives on the part of the lawyer so long as the conduct complained of has some relation to the litigation." *Id.* at 150. "In Massachusetts, as in all States that have adopted this formulation, application of the privilege extends beyond statements that are made in the court room itself to 'communications preliminary to a proposed judicial proceeding.'" *Id.* (quoting *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976)). It also applies to conduct during litigation. *Id.* at 156-60.

The privilege originally developed to protect lawyers from defamation suits, *see, e.g.*, RESTATEMENT (SECOND) OF TORTS § 586 (1977), but has since expanded to civil liability

generally, *see Bassichis*, 490 Mass. at 151 (applying privilege to claim for fraudulent misrepresentation, and citing cases where privilege applied to bar claims for abuse of process, intentional infliction of emotional distress, invasion of privacy, negligence, and chapter 93A).

The purpose of the doctrine is to encourage zealous advocacy by lawyers and full disclosure by witnesses by removing the threat of civil liability. *See Bassichis*, 490 Mass. at 151-52. Accordingly, the privilege "ought not to be impaired by numerous and refined distinctions." *See id.* at 151 (quoting *Hoar v. Wood*, 44 Mass. 193, 198 (1841)); *see also id.* at 156 ("We accept this broad protection as necessary to encourage zealous advocacy."); *Fisher v. Lint*, 69 Mass. App. Ct. 360, 366 (2007) (describing the privilege as "a strong protection").

### 2. Claim for Civil Conspiracy for Abuse of Process

The amended complaint alleges that Mitchell and Cruickshank, both of whom are attorneys, participated in Bruce's plan to abuse the involuntary bankruptcy process for his own illegitimate purposes. (Am. Compl. ¶¶ 93-95). Plaintiffs contend that the litigation privilege is inapplicable because the claims against Mitchell and Cruickshank arise out of their role in generating a windfall for Bruce in his business endeavors, and not their efforts to advance and conduct the bankruptcy litigation.

Plaintiffs rely on *Kurker v. Hill*, 44 Mass. App. Ct. 184 (1998), which held that the litigation privilege did not "encompass the defendant attorneys' conduct in counselling and assisting their clients in business matters generally," *id.* at 192. But *Kurker* is inapposite. In *Kurker*, the attorneys rendered "legal advice and assistance to their clients" in relation to the purchase and sale of corporate assets and "engaged in a conspiracy to undervalue the assets." *Id.* Their assistance was primarily related to "counselling and assisting their clients in business matters generally," rather than pursuing litigation. *Id.* Here, however, the alleged wrongful actions of Mitchell and Cruickshank occurred in the context of preparing for and conducting

5

litigation—specifically, the involuntary bankruptcy proceedings. Thus, the litigation privilege applies to the advice and legal services they rendered.

Plaintiffs further argue that the privilege does not apply where, as here, an attorney's actions were taken at the direction of, and benefited, an individual who was not actually a party to the underlying "judicial proceedings or contemplated litigation."

According to the amended complaint, Mitchell and Cruickshank engaged in conduct that resulted in litigation aimed at Kerrissey and his company, at the behest of Bruce, their client. Whatever claims Kerrissey may have against Bruce arising out of those proceedings, the litigation privilege shields Mitchell and Cruickshank from liability. As noted, the litigation privilege is a "broad" and "strong" protection that "ought not to be impaired by numerous and refined distinctions." *Bassichis*, 490 Mass. at 156; *Fisher*, 69 Mass. App. Ct. at 366; *Hoar*, 44 Mass. at 198. Holding otherwise would open the floodgates to a host of new lawsuits targeting attorneys when the underlying litigation is initiated or funded by a non-party to the proceeding. That result contravenes the purpose of the privilege, which is to free attorneys "to expend time and resources . . . representing clients, [rather than] in their own defense." *Bassichis*, 490 Mass. at 152. Accordingly, the claims against Mitchell and Cruikshank are barred by the privilege, and will be dismissed.

### IV. Conclusion

For the foregoing reasons, Cruickshank's motion to dismiss (Docket No. 18) and Mitchell's motion to dismiss (Docket No. 19) are GRANTED.

**So Ordered.**

Dated: August 14, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court